## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **SARAH LAWSON,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00022 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:  PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Sarah Lawson, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2009).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Lawson protectively filed her application for SSI on November 1, 2005, alleging disability as of January 1, 2004, based on a herniated disc, nerve problems, anxiety and depression. (Record, ("R."), at 45-48, 51, 82.) The claim was denied initially and upon reconsideration. (R. at 31-33, 36, 37-39.) Lawson then requested a hearing before an administrative law judge, ("ALJ"). (R. at 40.) The ALJ held a hearing on April 24, 2007, at which Lawson was represented by counsel. (R. at 507-29.)

By decision dated June 7, 2007, the ALJ denied Lawson's claim. (R. at 13-22.) The ALJ found that Lawson had not engaged in any substantial gainful activity since January 1, 2004. (R. at 15.) The ALJ found that the medical evidence established that Lawson had a severe impairment, namely lumbar spine right disc protrusion with displacement of the nerve root at the L5-S1 level, but he found that Lawson's impairment did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-17.) The ALJ also found that Lawson had the residual functional capacity to perform simple, unskilled light[1] work

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also

that did not require standing or walking for more than two hours in an eight-hour workday and that did not require more than occasional stooping, crouching, climbing, crawling and kneeling. (R. at 17.) The ALJ found that Lawson was unable to perform any of her past relevant work. (R. at 21.) Based on Lawson's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Lawson could perform, including jobs as a crossing guard, a food prep worker (salad), miscellaneous food preparation work, a dishwasher, a housekeeper, an animal caregiver and a cashier. (R. at 22.) Thus, the ALJ found that Lawson was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. § 416.920(g) (2009).

After the ALJ issued his decision, Lawson pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 6-9.) Lawson then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2009). The case is before this court on Lawson's motion for summary judgment filed November 3, 2009, and on the Commissioner's motion for summary judgment filed December 3, 2009.

## II. Facts and Analysis

Lawson was born in 1976, (R. at 45), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has a eighth-grade education and past relevant work experience as a cook, a dishwasher and a hotel housekeeper. (R. at 51-52, 57,

---

can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2009).

511.)  She testified that she could not work due to problems with her back, neck, legs and arms, as well as anxiety and depression.  (R. at 513.)  Lawson testified that she suffered constant back, neck and leg pain.  (R. at 514-15.)  She stated that she had difficulty sitting in one position.  (R. at 515.)  She testified that she experienced difficulty standing and walking, estimating that she could stand in one place for approximately 20 minutes before having to sit down.  (R. at 516.)  She stated that lifting items weighing more than 10 pounds strained her neck and worsened her pain. (R. at 516.)  Lawson testified that she had difficulty rising from a seated position on the floor, and she stated that her ability to get down on her hands and knees was very limited due to knee problems.  (R. at 516-17.)  Lawson testified that her two oldest children helped her shop and perform household chores.  (R. at 517.)  She stated that she did not feel like doing anything three to four days weekly.  (R. at 518-19.)

Lawson testified that she experienced panic attacks approximately once weekly and crying spells three times weekly.  (R. at 519-20.)  She stated that she did not like to be around people and stayed home most of the time.  (R. at 520.)  Lawson further testified that she had difficulty with memory and concentration.  (R. at 520.)  She stated that counseling "help[ed her] get by."  (R. at 522.)

Robert Spangler, a vocational expert, also was present and testified at Lawson's hearing.  (R. at 525-28.)  He classified Lawson's past work as a cook and a hotel housekeeper as medium[2] and unskilled.  (R. at 526.)  Spangler was asked to assume a hypothetical individual of Lawson's age, education and work history who could

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds.  If someone can perform medium work, she also can perform light and sedentary work.  *See* 20 C.F.R. § 416.967(c) (2009).

perform light work, but who could stand or walk only up to two hours in an eight-hour workday, who could occasionally stoop, crouch, climb, crawl and kneel, and who could perform only simple, unskilled jobs. (R. at 526.) Spangler testified that such an individual could perform the light jobs of a crossing guard, a food prep (salad bar) worker, a miscellaneous food prep worker, a dishwasher, a housekeeper, a nonfarm animal caregiver and a cashier. (R. at 527.) Spangler was next asked to consider an individual with the limitations set forth in the assessment performed by Dr. Bailey on April 6, 2007. (R. at 346-48, 527.) Spangler testified that there was not a significant number of jobs available in the national economy that such an individual could perform. (R. at 528.)

In rendering his decision, the ALJ reviewed records from Virginia Public Schools; Mendota Medical Center; Indian Path Medical Center; Blue Ridge Neuroscience Center; 1st Step Rehab; Russell County Medical Center; Southeastern Pain Management Center; Bristol Surgery Center; Frontier Health; Dr. William Humphries, M.D.; Richard J. Milan Jr., Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Dwight L. Bailey, M.D.; Dr. Shirish Shahane, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dr. James M. Turnbull, M.D.; Holston Valley Medical Center; and The Department of Neurological Surgery at the University of Virginia. Lawson's attorney also submitted additional medical records from Frontier Health, Dr. Bailey and William J. Hamil, M.Ed., to the Appeals Council.[3]

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Lawson argues that the ALJ erred by failing to find that she suffers from a severe mental impairment. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 7-9.) Lawson further argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to the opinions of Dr. Bailey regarding her physical and mental residual

functional capacity. (Plaintiff's Brief at 9-11.) Lawson also argues that the ALJ erred by failing to find that her impairment(s) met or equaled the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P § 1.04(A). (Plaintiff's Brief at 11-14.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks the authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

I first will address Lawson's argument that the ALJ erred by failing to find that her spinal impairments met the listing for disorders of the spine, found at 20 C.F.R.

Part 404, Subpart P, Appendix 1, § 1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2009). It is well-settled that a claimant must prove that she meets *all* of the requirements of a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). For the following reasons, I find that substantial evidence supports the ALJ's finding that Lawson's spinal impairments do not meet the requirements of § 1.04(A).

It is clear from the record that Lawson suffers from a herniated nucleus pulposus resulting in compromise of a nerve root. An October 15, 2004, MRI of Lawson's lumbar spine showed a relatively large disc herniation at the L5-S1 level centrally and extending to the right with some mild cephalad migration and nerve root displacement. (R. at 141.) The record also contains evidence of nerve root compression characterized by neuroanatomic distribution of pain and limitation of motion of the spine. (R. at 205, 214, 273, 301-02, 305, 356-57, 385, 424-26, 428-29, 431, 433-34, 438-43, 445-46, 450-52, 454, 456, 458-61, 464, 466.) However, the record does not show motor loss *accompanied by* sensory or reflex loss. Additionally, while Lawson exhibited positive straight leg raise testing on some occasions, she did not on others. The burden is on the claimant in a social security case to show that her impairment meets the requirements of a medical listing. *See Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983). Although Lawson exhibited positive straight leg raise testing on the right and absent deep tendon reflexes in the right lower extremity on October 5, 2004, no evidence of motor loss or sensory loss was noted at that time. (R. at 127.) On November 29, 2004, straight leg raise testing was negative, and strength and tone were normal. (R. at 161.) On December 15, 2004, Lawson had nearly full strength in the lower extremities with no sensory deficit. (R. at 171.) On March 11, 2005, straight leg raise testing was negative, strength and tone were normal and sensation was intact. (R. at 155-56.) On March 29, 2005, although Lawson exhibited no deep tendon reflexes in the Achilles bilaterally, motor strength was normal and sensation was intact. (R. at 218.) On November 28, 2005, straight leg raise testing was negative, and Lawson had normal strength throughout. (R. at 204.) On January 3, 2006, Lawson had intact motor strength and sensation in the lower extremities. (R. at 201.) In March 2006, her muscle strength, reflexes and sensation were normal. (R. at 199.) In April 2006, Lawson had positive straight leg raise testing on the right at 80 degrees, absent deep tendon reflexes in the right ankle and mild sensory loss to light touch of the right ankle and right tibia/fibula region, but her strength was within normal limits. (R. at 273-74.) Again in August 2006, Lawson had positive straight leg raise testing on the right, but no other physical limitations were noted. (R. at 395.) On January 3, 2007, Lawson exhibited a limited range of motion of the lumbar spine and diminished motor strength in the right leg, but no other relevant limitations were noted (R. at 357.) On March 30, 2007, deep tendon reflexes were absent in the ankles, but no other relevant lumbar spinal limitations were noted. (R. at 408.) In May, July and August 2007, as well as in June, July August, September and November 2008, Lawson's motor strength was normal bilaterally. (R. at 453, 455, 457, 461, 493, 495, 499, 503, 505.) On May 27, 2008, Lawson had limited range of motion of the lower

back, and straight leg raise testing was positive on the right, but she had normal motor strength bilaterally. (R. at 424.) Thus, while Lawson has exhibited all of the criteria of § 1.04(A) at one time or another, there is not evidence before the court showing that she has exhibited all of the requisite symptoms consistently or contemporaneously.

Given that Lawson has the burden of showing that her impairment meets a listing and, given all of the above-stated medical evidence, I find that substantial evidence supports the ALJ's finding that Lawson's lumbar impairment does not meet the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A).

On February 25, 2007, an MRI of the cervical spine showed multi-level disc disease, a disc protrusion with neural impingement at the C4-C5 level on the left, a disc extrusion with neural impingement at the C5-C6 level of the spine on the right, a central disc protrusion without neural impingement at the C6-C7 level centrally and a disc protrusion at the T3-T4 level of the upper thoracic spine. (R. at 361-62.) Thus, Lawson's cervical spine impairment meets the first requirement of § 1.04(A). I also find that there is evidence in the record showing that her cervical spine impairment resulted in neuroanatomic distribution of pain, as well as limited range of motion of the cervical spine. (R. at 356, 408-09, 423, 425, 428, 431, 433, 438-40, 447, 450, 454, 458, 464, 466-67, 499, 502.) However, there is no evidence in the record that Lawson's cervical spine impairment has resulted in motor loss *accompanied by* sensory or reflex loss. In January 2007, Lawson had limited range of motion on the right and diminished right upper extremity strength, but there was no evidence of sensory or reflex loss. (R. at 355-56.) In February and March 2007, despite cervical

spine tenderness and painful range of motion, Lawson had normal strength bilaterally. (R. at 349, 351.) On March 27, 2007, Lawson had diminished strength in the right upper extremity, but without evidence of limitation of range of motion or any other criteria listed in § 1.04(A). (R. at 414.) On March 30, 2007, an evaluation at the Department of Neurological Surgery at the University of Virginia showed absent deep tendon reflexes in the brachioradialis on the right and decreased sensation to touch throughout the right fingers, but Lawson's upper extremity strength was normal. (R. at 408.) In May 2007, she had limited range of motion of the neck, but her strength was normal. (R. at 461.) On August 21, 2007, Lawson exhibited limited range of motion of the neck, but no other cervical spine limitations were noted. (R. at 451.) In June, July and August 2008, Lawson had limited range of neck motion, but exhibited normal strength bilaterally. (R. at 499, 502-03, 505.)

As with her lumbar spinal impairment, there is no evidence in the record showing that Lawson's cervical spinal impairment meets all the criteria of § 1.04(A). All of this being the case, I find that substantial evidence supports the ALJ's finding that Lawson's cervical spine impairment does not meet the listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A).

Next, I will address Lawson's argument that the ALJ erred by failing to grant controlling weight to the opinions of Dr. Dwight L. Bailey, M.D., her treating physician. I first will address the ALJ's weighing of the physical evidence before turning to the mental evidence of record. Based on my review of the record, I find that substantial evidence does not support the ALJ's weighing of the physical evidence of record. The ALJ stated in his decision that he was granting less weight

to the Medical Source Statement Of Ability To Do Work-Related Activities (Physical), completed by Dr. Bailey on April 6, 2007. (R. at 20.) In this assessment, Dr. Bailey found that Lawson could lift and/or carry items weighing up to 10 pounds occasionally and less than 10 pounds frequently. (R. at 346-48.) He found that she could stand and/or walk less than two hours in an eight-hour workday, sit about six hours in an eight-hour workday and that she was limited in her ability to push and pull in all four extremities. (R. at 346-47.) Dr. Bailey opined that Lawson could never climb, crouch or crawl, but that she could occasionally balance, kneel and stoop. (R. at 347.) He found that she was limited to occasionally reaching, as well as handling, fingering and feeling objects. (R. at 347.) Finally, Dr. Bailey found that Lawson was limited in her ability to work around temperature extremes, vibration, humidity/wetness and hazards. (R. at 348.) Instead, the ALJ granted more weight to the April 25, 2006, consultative evaluation of Dr. William Humphries, M.D. (R. at 20, 272-75.) Dr. Humphries opined that Lawson could sit six hours in an eight-hour workday, stand and walk two hours in an eight-hour workday, lift items weighing up to 25 pounds occasionally and up to 10 pounds frequently, occasionally stoop, crouch, climb, crawl and kneel and should avoid heights and hazards. (R. at 275.)

The record also contains two Physical Residual Functional Capacity Assessments completed by state agency physicians. On January 12, 2006, Dr. Shirish Shahane, M.D., found that Lawson could perform light work, diminished by a limitation on the ability to push and/or pull with the lower extremities and an occasional ability to climb, to stoop, to kneel, to crouch and to crawl. (R. at 313-19.) Dr. Shahane found that Lawson could frequently balance, and he imposed no manipulative, visual, communicative or environmental limitations. (R. at 315-16.)

On May 5, 2006, Dr. Richard M. Surrusco, M.D., another state agency physician, found that Lawson could lift and/or carry items weighing up to 20 pounds occasionally, up to 10 pounds frequently, that she could stand and/or walk at least two hours in an eight-hour workday, that she could sit about six hours in an eight-hour workday, but that she was limited in her ability to push and/or pull with the lower extremities. (R. at 291-97.) Dr. Surrusco opined that Lawson could occasionally climb, balance, stoop, crouch, crawl and kneel and that she should avoid concentrated exposure to vibration and avoid all exposure to hazards, such as heights and machinery. (R. at 293-94.) He imposed no manipulative, visual or communicative restrictions. (R. at 293-94.)

Under 20 C.F.R. § 416.927(d)(2), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. The ALJ must consider objective medical facts and opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(d)(2) (2009). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ stated in his decision that he was according less weight to Dr. Bailey's opinion that Lawson could perform less than the full range of sedentary work because it was based on Lawson's subjective complaints and was not consistent with his own treatment notes. (R. at 20.) It is true that Dr. Bailey placed harsher restrictions on Lawson's work-related physical abilities in the April 2007 assessment than he did in an assessment he completed on November 29, 2006. In that assessment, Dr. Bailey had opined that Lawson could lift and/or carry items weighing up to 20 pounds on both a frequent and occasional basis, that she could stand and/or walk less than two hours in an eight-hour workday, that she could sit for about six hours in an eight-hour workday and that she was limited in her ability to push and pull with the lower extremities. (R. at 307-09.) Dr. Bailey found that Lawson could occasionally balance, kneel and stoop, but could never climb, crouch or crawl. (R. at 308.) He further found that she was limited to occasionally reaching, as well as handling, feeling and fingering objects. (R. at 308.) Finally, Dr. Bailey found that Lawson was limited in her ability to work around noise, hazards and fumes. (R. at 309.) He based all of these limitations on Lawson's herniated lumbar disc. (R. at 309.)

Although Dr. Bailey did not explain his more restrictive findings in the April 2007 assessment, the record shows that between the time of the November 2006 assessment and the April 2007 assessment, Lawson developed cervical spine problems, as documented by an MRI performed in February 2007. (R. at 361-62.) Additionally, although the Commissioner argues that Dr. Bailey's opinions were based on Lawson's subjective complaints, the record shows that a physical examination was performed either by Dr. Bailey or a member of his staff at each visit. Such examinations consistently showed lumbosacral muscle tenderness and a limited

range of motion due to pain. (R. at 301, 352, 355, 357, 359-60, 417, 424, 426, 439, 443, 451, 452, 454-55, 461, 467, 493, 499, 503, 505.) At times, Lawson also exhibited diminished motor strength in the right leg and positive straight leg raise testing on the right. (R. at 357, 424.) Physical examinations also showed cervical paraspinal tenderness and limited and painful range of motion of the neck, (R. at 349, 351, 352, 356, 416, 439, 451, 459, 461, 466, 499, 502-03, 505), absent deep tendon reflexes in the right brachioradialis and decreased sensation throughout most of the right fingers. (R. at 408.) In January 2007, and again in March 2007, Lawson had diminished upper extremity strength. (R. at 355, 414, 464.)

Although Dr. Humphries and the state agency physicians did not impose restrictions as limiting as those imposed by Dr. Bailey, it appears that Lawson developed cervical spine problems between the time that Dr. Humphries and the state agency physicians performed their evaluations and the time that Dr. Bailey performed his. Neither Dr. Humphries nor the state agency physicians had the benefit of Dr. Bailey's treatment notes or the MRI of Lawson's cervical spine at the time of their evaluations. Moreover, I find that Dr. Bailey's opinions are supported by other evidence in the record, including x-rays and MRIs of Lawson's lumbar and cervical spines and her knees, as well as Dr. Bailey's own physical examinations of Lawson. (R. at 139, 141, 276, 361-62.) Additionally, the following medical evidence in the record supports Dr. Bailey's findings. In October 2004, Lawson exhibited positive straight leg raise testing, and deep tendon reflexes were absent in the right lower extremity. (R. at 127.) In March 2005, deep tendon reflexes in the lower extremities were absent. (R. at 218.) In April 2006, straight leg raise testing was positive on the right, with back pain elicited on the left at 80 degrees. (R. at 273.) Also at that time,

lower extremity joint range of motion was reduced in the right hip and right knee due to low back pain. (R. at 274.) There was some mild give-way in the right lower leg due to discomfort in the right low back and gluteus regions, and Lawson had mild sensory loss to light touch of the lateral aspect of the left foot, right ankle and right tibia/fibula region. (R. at 274.) In July 2006, Lawson exhibited tenderness and 45-degree flexion at the waist. (R. at 385.) In August 2006, straight leg raise testing was positive at 30 degrees on the right and 60 degrees on the left. (R. at 395.) In March 2007, deep tendon reflexes were absent in the ankles and right brachioradialis. (R. at 408.) Sensation was decreased to sharp touch throughout the right fingers except the middle finger. (R. at 408.)

As noted above, I find that Dr. Bailey's April 2007 opinion is consistent with his treatment notes and was not merely based on Lawson's subjective complaints. I further find that Dr. Bailey's April 2007 opinion is supported by other substantial evidence of record. That being the case, I find that substantial evidence does not support the ALJ's weighing of the medical evidence with regard to Lawson's physical impairments, and I recommend that this case be remanded to the ALJ for further consideration on this ground.

Because, as noted above, substantial evidence supports the ALJ's finding that Lawson's spinal impairments do not meet a medical listing, I must determine whether substantial evidence supports the ALJ's physical residual functional capacity finding. For the following reasons, I find that it does not. The ALJ concluded that Lawson had the residual functional capacity to perform simple, unskilled light work that did not require standing or walking for more than two hours in an eight-hour workday and

that did not require more than occasional stooping, crouching, climbing, crawling and kneeling. (R. at 17.) Given my finding that substantial evidence does not support the rejection of Dr. Bailey's April 2007 physical assessment, I now find that substantial evidence also does not support the ALJ's physical residual functional capacity finding.

As stated above, Dr. Bailey's April 2007 findings are supported by the MRI and x-ray evidence, as outlined above, as well as by the findings on physical examination, consistently showing limited range of motion of the lumbar and cervical spine with associated pain and tenderness, as well as intermittent findings of diminished strength and sensory and reflex loss. In addition, Dr. Bailey's findings are further supported by findings associated with Lawson's knee impairment. Specifically, an MRI of the left knee, performed in November 2005, showed patellofemoral abnormality with chondromalacia patella. (R. at 139.) Lawson underwent physical therapy at 1st Step Rehab for knee pain in December 2004. (R. at 171.) In April 2006, Dr. Humphries diagnosed, among other things, mild to moderate degenerative joint disease of both knees with mild chondromalacia patella. (R. at 275.) In November 2006, Lawson exhibited bilateral knee tenderness with painful range of motion. (R. at 359-60.) From July 2007 through September 2008, Lawson continued to complain of bilateral knee pain, for which she received injections. (R. at 433, 443, 448, 454-55, 496.) Finally, I note the December 1, 2008, Assessment Of Ability To Do Work-Related Activities (Physical) completed by Shelley Miller, F.N.P., a family nurse practitioner for Dr. Bailey. Miller concluded that Lawson could lift and/or carry items weighing less than 10 pounds, that she could stand, walk and sit for a total of one to two hours in an eight-hour workday, but for only 30 minutes without interruption, that she could occasionally climb and balance, but could never stoop, kneel, crouch or crawl, that her

abilities to reach and to push and/or pull were limited and that she should avoid moving machinery and temperature extremes. (R. at 489-91.) Miller opined that Lawson would miss more than two workdays monthly. (R. at 491.)

Although Miller's assessment was completed after the ALJ rendered his decision, it must be considered. It is well-settled that the Appeals Council must consider evidence submitted to it if it is new, material and relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 416.1470 (2009); *see also Wilkins*, 953 F.2d at 96. The ALJ's decision in this case is dated June 7, 2007, and Miller's assessment was completed December 1, 2008. Nonetheless, because the Appeals Council considered the evidence, this court also must consider it in determining whether substantial evidence supports the ALJ's physical residual functional capacity finding. I find that had the ALJ had this assessment before him, the outcome of this case might have been different. That being the case, and for the reasons stated above, I cannot find that substantial evidence supports the ALJ's physical residual functional capacity finding. Therefore, I recommend that the case be remanded to the ALJ for further consideration of this issue.

Lawson also argues that the ALJ erred by failing to find that she suffers from a severe mental impairment. On this point, I agree. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's basic ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2009). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of

judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2009). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Even assuming the ALJ was justified in discounting Dr. Bailey's mental assessment, I find that substantial evidence does not exist in the record to support the ALJ's finding that Lawson does not suffer from a severe mental impairment. Although the state agency psychologists concluded that Lawson suffered from nonsevere mental impairments, the outpatient treatment notes from Dr. James M. Turnbull outpatient treatment notes and the evaluation by psychologist William J. Hamil, M.Ed., LSPE, indicate otherwise. Lawson underwent mental health counseling with Dr. Turnbull and his staff at Frontier Health from November 2005 to January 2008. (R. at 223-66, 411-13, 419-22.) In November 2005, the Beck Anxiety Inventory indicated "moderate anxiety," and the Beck Depression Inventory indicated "extreme depression." (R. at 264-66.) Lawson experiences panic attacks and regular crying spells. (R. at 241, 379, 460, 519-20.) Moreover, Dr. Turnbull assessed Lawson's Global Assessment of Functioning, ("GAF"), score at 55[4] in November and December

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 51 to 60 indicates that the individual

2005, and again in November 2006, indicating moderate symptoms or moderate difficulty in social, occupational or school functioning. (R. at 239, 241, 369.) Her diagnoses included anxiety disorder, not otherwise specified, depressive disorder, not otherwise specified, adjustment disorder with depression and pain disorder. (R. at 241, 252, 419.) She was prescribed Cymbalta and Xanax for anxiety and depression. (R. at 223, 381.)

Hamil's evaluation, performed on August 4, 2007, also supports a finding of a severe mental impairment. Although this evaluation was performed more than three months following the administrative hearing and approximately two months after the ALJ issued his decision, the Appeals Council considered it in deciding not to grant review. Therefore, this court also must consider it in determining whether substantial evidence supports the ALJ's finding that Lawson does not suffer from a severe mental impairment. *See Wilkins*, 953 F.2d at 96. When Lawson saw Hamil, she reported physical, sexual and emotional abuse by a family member as a child, which she had never revealed to any of her treating sources. (R. at 477.) Lawson described her mood as generally "depressed and worried." (R. at 478.) She had limited attention and concentration, and her short-term memory appeared to be impaired. (R. at 479.) Hamil administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test, on which Lawson achieved a verbal IQ score of 79, a performance IQ score of 70 and a full-scale IQ score of 73, placing her in the borderline range of intellectual functioning. (R. at 479.) Hamil also administered the Minnesota Multiphasic Personality Inventory-Second Edition, ("MMPI-2"), the results of which indicated

---

has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning. . . ." DSM-IV at 32.

"severe psychopathology." (R. at 479.) He deemed the results of the psychological testing to be valid. (R. at 479.)

Hamil diagnosed Lawson with generalized anxiety disorder, panic disorder without agoraphobia, depressive disorder, not otherwise specified, and chronic post-traumatic stress disorder. (R. at 483.) He placed Lawson's then-current GAF score at 45, indicating "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning. . . ." DSM-IV at 32. (R. at 483.) Hamil rated Lawson's prognosis as guarded, noting that continued mental health counseling and medication management by a psychiatrist were in her best interests. (R. at 482.)

Hamil also completed an Assessment Of Ability To Do Work-Related Activities (Mental), finding that Lawson had a good ability to understand, remember and carry out simple job instructions, a fair ability to follow work rules, to understand, remember and carry out detailed, but noncomplex, job instructions, to behave in an emotionally stable manner and to relate predictably in social situations and a poor ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex job instructions, to maintain personal appearance and to demonstrate reliability. (R. at 484-87.) Hamil opined that Lawson's impairments would cause her to miss more than two workdays monthly. (R. at 487.) He explained that these restrictions were based on Lawson's panic attacks, difficulty focusing, excessive worry, stress sensitivity and hypervigilance. (R. at 484-86.)

All of this being said, I find that, contrary to the Appeals Council's finding, had this evidence been before the ALJ, the outcome might have been different. Considering Hamil's evaluation in combination with the outpatient mental health treatment notes, I find that substantial evidence does not exist to support the ALJ's finding that Lawson does not suffer from a severe mental impairment. I recommend that the case be remanded to the ALJ for further consideration of this issue.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists to support the ALJ's finding that Lawson's spinal impairments do not meet or equal the medical listing for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A);

2.  Substantial evidence does not exist to support the ALJ's weighing of the evidence with regard to Lawson's physical residual functional capacity;

3.  Substantial evidence does not exist to support the ALJ's finding that Lawson does not suffer from a severe mental impairment; and

4.  Substantial evidence does not exist to support the ALJ's finding that Lawson is not disabled under the Act.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Lawson's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further consideration consistent with this Report and Recommendation. I further recommend that the court deny Lawson's request to present oral argument based on my finding that it is not necessary, in that the parties have more than adequately addressed the relevant issues in their written arguments.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of

the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    This 5th day of April 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE